IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRADLEY WILLIAMS,

                Plaintiff,

      v.

BRIAN E. WOLFE, as an individual and in
his official capacity as MALHEUR
COUNTY SHERIFF and MALHEUR
COUNTY,

                Defendants.

Case No. 2:15-cv-02044-SU

**OPINION AND ORDER**

SULLIVAN, United States Magistrate Judge:

Plaintiff Bradley Williams, a former employee of the Malheur County Sheriff's Office, brings this action against defendants Malheur County and Sheriff Brian Wolfe, as an individual and in his official capacity as Malheur County Sheriff, arising from plaintiff's termination of employment from the Sheriff's Office in February 2015. Compl. (Docket No. 1) ¶ 13. Before the Court are defendants' Motion to Compel Deposition Answers (Docket No. 22), plaintiff's Motion to Compel the production of documents (Docket No. 24), and plaintiff's Second Motion

Page 1 – OPINION AND ORDER

to Compel the production of documents (Docket No. 43).  The Court heard oral argument on November 8, 2016.  (Docket No. 47).  On review of the parties' arguments and submissions, the Court GRANTS defendants' Motion to Compel Deposition Answers, GRANTS IN PART AND DENIES IN PART plaintiff's (first) Motion to Compel, and GRANTS plaintiff's Second Motion to Compel.

## BACKGROUND

Plaintiff filed this action on October 29, 2015, asserting several claims arising from the termination of his employment with the Malheur County Sheriff's Office.  Compl. (Docket No. 1).  Specifically, plaintiff brings a claim under 42 U.S.C. § 1983 for violation of his First Amendment Rights; state law claims for discrimination based on religion, O.R.S. § 659A.030, and for retaliation, O.R.S. §§ 659A.199, 659A.203 & 659A.030(1)(f); and a claim for state common law wrongful discharge.  Plaintiff alleges that defendants retaliated against him in part for reporting Undersheriff Travis Johnson's allegedly unlawful manner of supervising employees, and for plaintiff's reporting of unlawful discrimination against a "female Deputy Recruit" based on her sex.  Compl. (Docket No. 1) ¶¶ 11-12. Plaintiff alleges that defendant Wolfe, plaintiff's former supervisor, is a member of the Church of Jesus Christ of Latter-day Saints ("L.D.S. Church"), and that Wolfe gave other members of the L.D.S. Church preferential treatment in making employment decisions.  *Id.* ¶¶ 6-7.   Plaintiff alleges that the reasons given for his February 2015 termination, including his purported disclosure of confidential information, insubordination, and confrontations with other employees, were pretextual, and that he did not engage in this conduct.  *Id.* ¶¶ 13-15.

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

Page 2 – OPINION AND ORDER

**DISCUSSION**

**I.**      **Defendants' Motion to Compel Deposition Answers**

Defendants ask the Court to compel plaintiff to answer specific deposition questions about a conversation between him and former Malheur County Deputy Shayla Tucker (the aforementioned "female Deputy Recruit," Compl. (Docket No. 1) ¶ 12) that occurred one week before plaintiff's initial deposition on June 21, 2016.   (Docket No. 22).  At his deposition, plaintiff testified that he spoke with Tucker approximately one week earlier and that she "informed [him] that [his] attorneys had spoke [*sic*] with her."  Edenhofer Decl. Aug. 18, 2016 (Docket No. 23) ¶ 3, Williams Dep. 166:16-22 (Docket No. 23-1).  Defendants' counsel inquired into the substance of plaintiff's conversation with Tucker, to which plaintiff's counsel objected, instructing plaintiff not to answer based on the work-product doctrine and the attorney-client privilege.  *Id.* 166:23-167:8.

Defendants ask the Court to compel plaintiff to answer the questions regarding the substance of his conversation with Tucker, and argue that neither the work-product doctrine nor the attorney-client privilege protects it.  Plaintiff responds that the common interest privilege, an "extension" of the attorney-client privilege, Pl.'s Opp'n (Docket No. 29), at 2, protects his conversation with Tucker from disclosure, because the same counsel, Matthew Ellis ("Ellis"), represents plaintiff and Tucker and because plaintiff and Tucker have a common interest in this matter, given that plaintiff alleges that defendant Wolfe retaliated against him, in part, for opposing discrimination against Tucker.

### A.    Legal Standard

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted).

> The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication. The attorney-client privilege exists where: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived. Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject.

*Id.* (quotations and citations omitted).

The common interest privilege is not a "separate privilege," but rather is "an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012); *see also Brill v. Walt Disney Pictures & Television*, 243 F.3d 546, at *1 (9th Cir. 2000) (unpublished table decision). "[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception. Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. The communication must be made to "facilitate representation" between the parties. *Id.* at 1129-30 (quotation omitted); *Sizemore v. Madras*, No. Civ. 02-74-MA, 2004 WL 1318883, at *2 (D. Or. June 10, 2004) (requiring, for the common interest doctrine to apply, that parties "work in tandem . . . to pursue a joint legal enterprise"). The

doctrine also applies to communication between parties, not solely to those between attorneys, in litigated or non-litigated matters, even if the parties do not share the same attorney. *Sizemore*, 2004 WL 1318883, at *2 (citing Restatement (Third) of the Law Governing Lawyers § 126 (1996)); *Armstrong Mfg. Co. v. Wright Mach. Tool Co.*, No. Civ. 91-1021-FR, 1992 WL 32281, at *3 (D. Or. Feb. 3, 1992) ("'[C]ommon interests' should not be construed as narrowly limited to co-parties. So long as [the persons] anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts."); *Interstate Prod. Credit Ass'n v. Fireman's Fund Ins. Co.*, 128 F.R.D. 273, 280 (D. Or. 1989) (observing that the common interest doctrine applies to "certain closely related or allied persons"). A common interest will be found between attorneys representing parties "maintaining substantially the same cause . . . in the same litigation," *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964), or where persons, though not co-parties, "anticipate litigation against a common adversary on the same issue or issues," *Armstrong*, 1992 WL 32281, at *3.[1]

---

[1] By contrast, a common interest has been found not to exist between a party and the federal government where the party shared information with a U.S. Attorney in order to facilitate prosecution of an opposing party, because "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this" doctrine. *In re Pac. Pictures Corp.*, 679 F.3d at 1129. A common interest also has been found not to exist between a defendant city and a district attorney, who was engaged in a criminal investigation of the opposing plaintiff. *Sizemore*, 2004 WL 1318883, at *2. Nor does the common interest doctrine apply to a named inventor on a patent (which patent was subsequently assigned to plaintiff company, and where plaintiff had later terminated the inventor's employment and the two were estranged) and counsel for the defendant who allegedly infringed said patent, where counsel for defendant communicated with the named inventor regarding litigation preparation. *Armstrong*, 1992 WL 32281, at *3.

### B.    Application

The question before the Court is not whether the conversation between plaintiff and Tucker is *itself* protected by the common interest privilege.  Rather, the inquiry is (1) whether Tucker engaged in some attorney-client communication which the attorney-client privilege would protect, and (2) whether the common interest doctrine protects from waiver any disclosure of such a communication to plaintiff.  It is plaintiff's burden to show that the conversation asked about at deposition pertained to some protected attorney-client communication that Tucker engaged in, and that a cognizable common interest exists between plaintiff and Tucker that protects against Tucker's waiver of any such privilege.  Plaintiff has not met this burden.

The materials before the Court are contradictory as to whether Ellis, counsel for plaintiff, also represented Tucker, or whether Tucker had any legal representation at all.  However, at oral argument, counsel for plaintiff explained the apparent contradictions.    Counsel stated that Tucker consulted with Ellis at the time of her dismissal from the Sheriff's Office, and again later regarding filing a lawsuit regarding her dismissal, but that Tucker did not retain Ellis because she lacked sufficient funds.  Tucker's consultation with Ellis may have been enough to establish an attorney-client relationship sufficient for Ellis to be prohibited from disclosing the content of that conversation.   Additionally, counsel stated that Ellis represents Tucker as a witness in this litigation.   Regardless, it is remains unclear whether Ellis represented Tucker as a potential litigant or as a witness, or whether Ellis was merely interviewing Tucker in preparation for his case on behalf of plaintiff.

While the attorney-client privilege may protect Tucker's conversation with Ellis, plaintiff has not established that the common interest doctrine applies to prevent Tucker's conversation

with plaintiff from waiving such a privilege as plaintiff has not established any protectable common interest between him and Tucker. Thus, Tucker's conversation with plaintiff about her conversation with Ellis waived any privilege that might exist. Plaintiff and Tucker are not co-parties to this litigation. They have no shared legal interest in the outcome of this or any other litigation—for instance, were plaintiff to prevail here, it would not remedy defendants' allegedly unlawful treatment of Tucker. At most, Tucker has an interest in her not having been discriminated against. Plaintiff too has an interest in not having been discriminated and retaliated against. Although the factual bases of these potential claims may overlap, they are not a shared legal claim that the parties could, for example, jointly prosecute as co-parties. Tucker may want plaintiff to prevail, because he allegedly was retaliated against in an attempt to protect her, but this desire to see a party succeed is not a common interest like that between co-parties in a lawsuit. *See In re Pac. Pictures Corp.*, 679 F.3d at 1129. Nor is there any indication of an agreement, whether written or unwritten, express or implied, between plaintiff and Tucker to pursue a joint legal strategy, to work in tandem, or to conduct a joint legal enterprise. Thus, plaintiff has failed to establish the common interest necessary to invoke the common interest doctrine and protect against waiver of whatever attorney-client privilege may exist. Because plaintiff's conversation with Tucker is not protected by the common interest doctrine, he must answer defendants' deposition questions regarding it.

For these reasons, the Court GRANTS defendants' Motion to Compel Deposition Answers (Docket No. 22).

**II.    Plaintiff's (First) Motion to Compel**

Plaintiff asks the Court for an order compelling defendants to produce personnel files and other employment documents for defendant Wolfe, Undersheriff Travis Johnson, former Deputy Shayla Tucker, Deputy Brian Belnap, and Deputy Carissa Jordan, and documents concerning two purported disciplinary incidents involving two other deputies.   Defendant Wolfe is the alleged decision-maker behind plaintiff's termination, and is accused of discrimination and retaliation.   Defendant Wolfe allegedly gave Johnson preferential treatment due to Johnson's membership in the L.D.S. Church, and defendant Wolfe allegedly retaliated against plaintiff for complaining of discriminatory employment practices against non-members of the L.D.S. Church. Tucker is the "female Deputy Recruit" on whose behalf plaintiff allegedly complained about unlawful and discriminatory treatment.  Belnap and Jordan allegedly had an intimate relationship in violation of Sheriff's Office policies, but were not subject to disciplinary action because of their membership in the L.D.S. Church.   Plaintiff alleges that, as a non-member of the L.D.S. Church, he received harsher and unfair disciplinary treatment. Defendants argue that privacy interests preclude production of the personnel files and that the files are not relevant, and that the requests regarding the specific disciplinary incidents are moot because defendants have already turned over the requested documents.

Specifically, Request for Production Nos. 1 and 2, from plaintiff's First Requests for Production, seek personnel files (excluding medical and financial information) as well as any other documents pertaining to evaluation, discipline, internal affairs investigation, and performance counseling regarding defendant Wolfe and the aforementioned employees of the Sheriff's Department.  First Brischetto Decl. (Docket No. 25) ¶¶ 2 & 3, Ex. 1 & 2 (Docket Nos.

25-1 & 25-2).[2]  Request for Production No. 3, from plaintiff's First Requests for Production, seeks "[a]ny and all documents that pertain to any investigation, discipline, or complaints of sexual misconduct concerning an employee" of the Sheriff's Office from 2010 to present.  First Brischetto Decl. (Docket No. 25) ¶ 2, Ex. 1 (Docket No. 25-1), at 3.  Request for Production No. 24, from plaintiff's Second Requests for Production, seeks all documents relating to an incident in which Deputy Casey Walker allegedly engaged in insubordinate activity while executing a search warrant, and for which no disciplinary action was allegedly taken, purportedly due to Walker's membership in the L.D.S. Church.  First Brischetto Decl. (Docket No. 25) ¶ 3, Ex. 2 (Docket No. 25-2), at 2.  Request for Production No. 25, also from plaintiff's Second Requests for Production, seeks all documents relating to former Deputy Daniel Heaton's soliciting of female inmates for sexual favors while he was a jail deputy, for which minimal disciplinary action was allegedly taken, purportedly due to Heaton's membership in the L.D.S. Church.  *Id.*[3]

Defendants argue that the entirety of defendant Wolfe's and Johnson's personnel records are not relevant, and that to produce the entire personnel files would violate their privacy.  As to Belnap and Jordan, defendants deny that there was any intimate relationship, and so argue that there was neither any discipline nor any record of such discipline.  Defendants argue that to request Tucker's entire personnel file violates her privacy interests, as she is a non-party, and that the entire file is not relevant.  Defendants also argue that the requests regarding Walker and Heaton are moot because defendants have turned over the relevant documents.

---

[2] Plaintiff's Request for Production Nos. 1 and 2 also refer to one David Kesey; however, plaintiff stated at oral argument that Kesey is not a subject of the Motion to Compel.
[3] In his Motion to Compel, plaintiff refers to Request for Production No. *26*, (Docket No. 24), at 10-11, but then describes the substance of Request for Production No. 25.  The Court assumes this to be a typographical error, and that plaintiff means to move to compel production under Request No. 25.

A.    **Legal Standard**

Courts generally disfavor the production of entire personnel files in employment discrimination and retaliation cases, due to privacy and relevancy considerations. *See, e.g.*, *Nakagawa v. Regents of Univ. of Cal.*, No. C06-2066SI, 2008 WL 1808902, at *3 n.2 (N.D. Cal. Apr. 22, 2008) ("The Court finds that plaintiff's original request for the 'complete' personnel files to be overbroad in every case."); *Tumbling v. Merced Irrigation Dist.*, 262 F.R.D. 509, 517 (E.D. Cal. 2009) ("Federal courts have recognized a person's interest in preserving confidentiality of information contained in his or her personnel files."); *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 WL 3380645, at *4 (W.D. Wash. Oct. 16, 2009) (refusing to order production of "complete personnel files for dozens of employees" where plaintiff had not provided "any justification for reviewing their entire files"). "[T]he right of privacy is not absolute and may be subject to invasion depending on the circumstances. Thus, privacy concerns are not an absolute bar to discovery, but instead are subject to the balancing of needs." *Burgess v. Wm. Bolthouse Farms Inc.*, No. 08-cv-1287LJOGSA, 2009 WL 4810170, at *3 (E.D. Cal. Dec. 8, 2009) (citation omitted).

Courts will, however, order the production of a subset of documents from a personnel file, narrowed to those documents relevant to the claims at issue in a case; in some instances, courts order production because the requesting party has itself undertaken to restrict the set of documents requested from within the personnel file, and in other instances, courts themselves undertake to circumscribe the documents they will order produced. *See, e.g.*, *Huson v. Forest Grove*, No. Civ. 01-817-FR, 2002 WL 31435690, at *2 (D. Or. Jan. 2, 2002) (ordering production of parts of individual defendant's personnel file, where that defendant allegedly

engaged in employment discrimination against plaintiff, and where the plaintiff requested only a subset of documents from the file); *Guthrey v. Cal. Dep't of Corr. & Rehab.*, No. 1:10-cv-02177-AWI, 2012 WL 3249554, at *9-11 (E.D. Cal. Aug. 7, 2012) (ordering, in an employment discrimination action, production of a limited range of documents from plaintiff's supervisor's personnel file, and from files of other employees who allegedly received favorable treatment over plaintiff on the basis of their religion); *Nakagawa*, 2008 WL 1808902 at *3 (ordering production where plaintiff "tailored" production requests to specific document from personnel files, to show treatment of similarly situated employees and also "a 'pattern or practice' of discriminatory preference for certain classes of individuals"); *Oyarzo v. Tuolumne Fire Dist.*, No. 1:11-cv-01271-LJO, 2013 WL 1758798, at *10-14 (E.D. Cal. Apr. 24, 2013) (narrowing the set of documents the court would order defendant to produce, in a retaliation case, to certain documents from personnel files of other employees, including employees who had made allegedly pretextual complaints about plaintiff's workplace conduct); *Tumbling*, 262 F.R.D. at 517 & 520 (ordering the production of files, which the court determined to be relevant, from personnel files of other employees in an employment discrimination case); *Wolber v. Kitsap Mental Health Servs.*, No. CV04-5751 RBL, 2006 WL 1734079, at *1 (W.D. Wash. June 22, 2006) (ordering production of supervisors' and similarly-situated employees' personnel files, limited to relevant documents); *Burgess*, 2009 WL 4810170 at *3 (ordering, in a discrimination and retaliation action, production only of those files from plaintiff's alleged harasser's personnel file that were relevant to the misconduct charged).

The presence of a protective order mitigates privacy concerns when producing personnel files.  *See, e.g.*, *Lauer v. Longevity Med. Clinic,* No. C13-0860-JCC, 2014 WL 5471983, at *7 (W.D. Wash. Oct 29, 2014); *Burgess*, 2009 WL 4810170, at *3.

**B.    Application**

    1.    <u>Request for Production Nos. 1 and 2</u>

The personnel files and related documents sought by Request Nos. 1 and 2—at least, portions of them—are relevant to plaintiff's claims, and portions of them must be produced.

Defendant Wolfe was plaintiff's supervisor and the decision-maker who allegedly engaged in the unlawful discrimination and retaliation.  It is he who allegedly favored other members of the L.D.S. Church in employment decisions.  His employment history is thus relevant to plaintiff's discrimination and retaliation claims.  The personnel file of Undersheriff Johnson is also relevant to plaintiff's claims, because plaintiff alleges that defendants retaliated against him in part for complaining to defendant Wolfe of Johnson's management and supervision of Sheriff's Office employees, and that Johnson received preferential treatment in being promoted based on his membership in the L.D.S. Church.  *See Guthrey*, 2012 WL 3249554 at *11 (ordering limited production of documents pertaining to employees who allegedly received favorable treatment due to their Christian religion).  The personnel file of Tucker is relevant because she was allegedly the victim of discriminatory treatment based on her sex, and because plaintiff alleges that defendants retaliated against him in part for complaining of this discrimination.  The personnel files of Belnap and Jordan are relevant because they allegedly received preferential treatment due to their membership in the L.D.S. Church, despite their

allegedly engaging in an unpermitted intimate relationship.  *See Guthrey*, 2012 WL 3249554, at *11.

However, production of these individuals' entire personnel files is not necessary and goes beyond what is relevant to this matter, especially given the countervailing privacy concerns.  At oral argument, counsel for plaintiff agreed to restrict the requested categories of documents from the personnel files to a relevant subset, and counsel for defendants agreed to this compromise. Thus, the Court GRANTS IN PART plaintiff's Motion to Compel (Docket No. 24), as to Request Nos. 1 and 2 as to defendant Wolfe, Johnson, Tucker, Belnap, and Jordan, as to the following documents: evaluations, disciplinary records, internal investigations, performance reviews, applications, and training documents.  Other documents from the personnel files, including medical records, insurance records, worker's compensation records, and financial documents (including regarding rates of pay and hours worked), shall not be produced.

2.    Request for Production No. 3

At oral argument, counsel for plaintiff stated his belief that he received the requested documents in conjunction with Request Nos. 24 and 25, discussed *infra* at II.B.3.  Accordingly, the Court DENIES IN PART plaintiff's Motion to Compel (Docket No. 24), as to Request No. 3, as moot.

3.    Request for Production Nos. 24 and 25

At oral argument, counsel for plaintiff stated that defendants have provided some documents relevant to these requests, and that plaintiff would withdraw his motion as to these requests if defendants provided a letter saying that they have produced all documents responsive

to these requests.  Defendants agreed to provide such a letter. Accordingly, the Court DENIES IN PART plaintiff's Motion to Compel (Docket No. 24), as to Request Nos. 24 and 25, as moot.

**III.    Plaintiff's Second Motion to Compel**

Plaintiff asks the Court for an order compelling defendants to produce additional two sets of documents:

The first set of documents, which is responsive to Request for Production No. 35 from plaintiff's Third Requests for Production, seeks performance evaluations of Undersheriff Travis Johnson's work with the Malheur County Sheriff's Office.  Robb Decl. (Docket No. 44) ¶ 2, Ex. 1 (Docket No. 44-1), at 2-3.  Plaintiff alleges that Johnson was promoted to undersheriff despite his lack of qualifications, in part because of his membership in the L.D.S. Church, and also that one of the pretextual reasons given for plaintiff's termination was his alleged insubordination toward Johnson.  Plaintiff argues that the requested evaluations are relevant for ascertaining Johnson's fitness for the undersheriff position and also for showing defendant Wolfe's assessment of Johnson, as Wolfe presumably executed the performance evaluations and Wolfe was also the person who terminated plaintiff.

Counsel for plaintiff confirmed at oral argument that the first set of documents, pertaining to Request No. 35, is subsumed within the documents requested in plaintiff's first Motion to Compel—specifically Request Nos. 1 and 2—which request in part personnel files and evaluations of Johnson.

The second set of documents, pertaining to Request for Production No. 36(A) from plaintiff's Third Requests for Production, seeks performance evaluations of sergeants, lieutenants, and management employees at the Sheriff's Office that Johnson conducted as

undersheriff.  Robb Decl. (Docket No. 44) ¶ 2, Ex. 1 (Docket No. 44-1), at 3.  Plaintiff argues that he will establish Johnson's lack of qualifications for the undersheriff position in part based on the subpar manner in which Johnson completed these evaluations as part of his work responsibilities.

At oral argument, the Court indicated that it was inclined to grant plaintiff's Second Motion to Compel as to Request No. 36(A) because the documents are relevant as to how the Sheriff's Office and Johnson evaluated its employees, including Williams, and could tend to show the reasons for William's termination, pretextual or actual.  Johnson's evaluations of Williams would also be relevant for comparison with his evaluations of other employees.

On November 14, 2016, counsel for defendant contacted the Court by email and informed the Court that, following oral argument, defense counsel conferred with plaintiff's counsel regarding plaintiff's Second Motion to Compel, and that defense counsel would not be filing an opposition to plaintiff's motion.

### A.        Request for Production No. 35

Because, as counsel confirmed at oral argument, plaintiff's Request No. 35 requests documents already requested by plaintiff's Request Nos. 1 and 2 and subject to the first Motion to Compel, discussed *supra* at II.B.1, the same analysis given above applies here and the Court GRANTS plaintiff's Second Motion to Compel (Docket No. 43), as to Request No. 35, subject to those limitations as provided for Request Nos. 1 and 2.  Defendants shall produce all evaluations of Johnson's performance with the Malheur County Sheriff's Office.  To the extent relevant to and requested by Request No. 35, this includes evaluations, disciplinary records, internal investigations, performance reviews, applications, and training documents.  Other documents

from Johnson's personnel file, including medical records, insurance records, worker's compensation records, and financial documents (including regarding rates of pay and hours worked), shall not be produced.

**B.     Request for Production No. 36(A)**

For the reasons stated above, and those stated at oral argument, evaluations that Johnson conducted are relevant for evaluation of Johnson's performance as undersheriff, for assessment of how Johnson and the Sheriff's Office evaluated its employees, and for comparison of how they evaluated Williams as compared to other employees.   Accordingly, the Court GRANTS plaintiff's Second Motion to Compel (Docket No. 43), as to Request No. 36(A).   To protect the privacy of those individuals evaluated who are not parties to this lawsuit, defendants shall redact their names from the documents, although defendants shall preserve, and inform plaintiff of, the individuals' ranks.   As with the personnel file documents, defendants shall not produce any medical records, insurance records, worker's compensation records, or financial documents (including regarding rates of pay and hours worked) in response to this request.

**CONCLUSION**

For the reasons stated above, defendants' Motion to Compel Deposition Answers (Docket No. 22) is GRANTED,  plaintiff's (first) Motion to Compel (Docket No. 24) is GRANTED IN PART AND DENIED IN PART, and plaintiff's Second Motion to Compel (Docket No. 43) is GRANTED.   All documents produced pursuant to plaintiff's Motions to Compel shall be subject to the Protective Order entered in this case.  (Docket Nos. 17 & 18).[4]

---

[4] Defendants requested, in the event the Court granted plaintiff's Motions to Compel, that the Court conduct an *in camera* review of the requested documents to determine whether any relevant documents exist and order production only of those documents.  Because the Court has

IT IS SO ORDERED.

DATED this 22nd day of November, 2016.


                                                     /s/ Patricia Sullivan
                                                    PATRICIA SULLIVAN
                                                    United States Magistrate Judge

---

narrowed the range of documents that defendants must produce to a relevant subset, and because any documents produced will be subject to the Protective Order entered in this case, the Court concludes that the relevant privacy interests are sufficiently protected and that *in camera* review is neither necessary nor appropriate.